**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | |
|---|---|
| **THE CINCINNATI INSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    **No. _____** |
| | ) |
| **TENNEVA, LLC,** | ) |
| | ) |
|     **Defendant.** | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the Plaintiff, The Cincinnati Insurance Company (hereinafter referred to as "Cincinnati"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, and alleges as its Complaint for Declaratory Judgment as follows:

### I.     THE PARTIES

1.     Cincinnati is an insurance company incorporated under the laws of the State of Ohio, with its principal place of business in Ohio.  Cincinnati has complied with the laws of the State of Tennessee pertaining to corporations engaged in insurance business therein and is authorized to transact business in the State of Tennessee.  Cincinnati is thus a citizen and resident of the State of Ohio for purposes of 28 U.S.C. § 1332.

2.     The Defendant, Tenneva, LLC ("Tenneva"), is a Tennessee Limited Liability Company doing business in Sullivan County, Tennessee, and may be served with process through its registered agent, Brian P. Deal, 500 Bluff City Highway, Bristol, Tennessee 37620-4606. Tenneva is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

## II.   VENUE AND JURISDICTION

3.      This action is brought pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and the request of Cincinnati that this Honorable Court issue a declaration as to the rights, status, and legal relationships between it and Tenneva as established by the insurance policy issued to Tenneva at 933-935 Shelby Street, Bristol, Tennessee 37620-2122.

4.      As Tenneva conducts business in this jurisdiction and in this division, the damage claim was submitted in this jurisdiction and in this division, the property is located in this jurisdiction and in this division and the policy was issued in this jurisdiction and in this division, venue is proper, and this Honorable Court has jurisdiction over both the subject matter and the parties herein.

5.      The amount in controversy exceeds the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00), exclusive of interest and costs.  More particularly, the amount in controversy could exceed the sum of Eight Million, Seven Hundred One Thousand, Eight Hundred Seventy-Nine and No/100 Dollars ($8,701,879.00).

## III.   FACTS

6.      Cincinnati issued Builders' Risk policy number ENP0499217 ("the Builders' Risk Policy") to Tenneva at 933-935 Shelby Street, Bristol, Tennessee 37620-2122 ("the subject property") providing coverage for the subject property building located at that address in accordance with the Builders' Risk Policy terms and conditions.  A true and exact copy of the Policy is attached hereto as **Exhibit 1**.

7.      The Builders' Risk Policy was in effect on September 25, 2020, providing coverage in accordance with the terms and conditions thereof, and subject to all

exclusions and post-loss conditions contained therein.

8.    The Builders' Risk Policy included an insuring agreement that provided, as follows:

### BUILDERS' RISK INLAND MARINE COVERAGE FORM

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Builders' Risk Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, examination of books and records and premiums.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks.

9.    The Builders' Risk Policy provided the following coverages:

### BUILDERS' RISK INLAND MARINE COVERAGE FORM

*****

**A. COVERAGE**

**1.    Covered Property**

**a.    Buildings and Structures** - "We" cover direct physical loss caused by a Covered Cause of Loss to buildings and structures described on the "declarations" while in the course of construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, all while located on the premises of the buildings or structures described on the "declarations", or within 1,000 feet of such premises. This also includes foundations, excavations, grading and filling.

**b.    Scaffolding and Construction Forms** - "We" cover direct physical loss, caused by a Covered Cause of Loss, to scaffolding or construction forms provided the scaffolding or construction forms are located at, or

within 1,000 feet of, a building or structure described on the "declarations" and used to service the described building or structure.

*****

**SOFT COSTS, RENTAL INCOME AND
EARNINGS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

*****

A.      COVERAGE

For the purposes of this endorsement only

1.      **Soft Costs**

Builders Risk Inland Marine Coverage Form **A. COVERAGE, 4. Additional Coverages, o. Soft Costs** is deleted in its entirety and replaced by the following:

o.      **Soft Costs** - When a "limit" is indicated for "soft costs", "we" pay for "soft costs" that arise out of a "delay" caused by a Covered Cause of Loss to Covered Property. The most "we" will pay is the limit of insurance shown in the Schedule of this endorsement.

10.      The Builders' Risk Policy provided coverage for only certain types of loss or damage, as follows:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

*****

**A. COVERAGE**

*****

3.      **Covered Causes of Loss**

"We" cover risks of direct physical loss unless the loss is:

a.      Limited by this coverage form; or

**b.**     Caused by a peril that is excluded.

11.     The Builders' Risk Policy included the following definitions:

## BUILDERS' RISK INLAND MARINE COVERAGE FORM

*****

### F. DEFINITIONS

**1.**     The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

**2.**     The words "we", "us", and "our" mean the company providing this coverage.

*****

**4.**     "Delay" means the period of time between the actual date of completion of the insured project with the exercise of due diligence and dispatch and the date the insured project would have been completed had no Covered Cause of Loss occurred to Covered Property.

**5.**     "Limit" means the amount of coverage shown in the declarations, unless the "limit" is amended by **E. OTHER CONDITIONS,15. Provisional Limit.**

*****

**8.**     "Soft Costs" means the necessary expenses relating to the construction, erection, or fabrication of Covered Property that are over and above those costs which would have been incurred had there been no "delay". These costs are limited to the following:

   **a.**     Additional interest expense on money "you" borrow to finance construction, remodeling, renovation or repair;

   **b.**     Additional realty taxes and other assessments which "you" incur;

   **c.**     Additional advertising and promotional expenses;

   **d.**     Additional costs consisting of commissions and administrative expenses, which result from renegotiation of leases, and expediting expenses

such as overtime and additional transportation or storage costs.

**e.** Additional fees for accountants, architects, attorneys, consultants, engineers, insurance premiums, franchises, project administration, royalties and watchman or guard services.

\*\*\*\*\*

**10.** "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

12. The Builders' Risk Policy contained the following limitation:

**SOFT COSTS, RENTAL INCOME AND
EARNINGS ENDORSEMENT**

\*\*\*\*\*

**A. COVERAGE**

\*\*\*\*\*

"We" pay only the "soft costs", loss of "rental income" and loss of "earnings" incurred within 12 consecutive months after the date of direct physical loss to Covered Property.

13. The Builders' Risk Policy contained the following exclusions applicable to the coverage provided in the Builders' Risk Inland Marine Coverage Form:

**SOFT COSTS, RENTAL INCOME AND
EARNINGS ENDORSEMENT**

\*\*\*\*\*

**B. EXCLUSIONS**

For the purposes of this endorsement only

**1. Builders Risk Inland Marine Coverage Form B. EXCLUSIONS, 2.d. Loss of Use** is deleted in its entirety and replaced by the following:

**d. Loss of Use** - "We" do not pay for loss caused by or resulting from loss of use, business interruption, "delay" or loss of market, except as provided by these Additional Coverages.

**2.** **Builders Risk Inland Marine Coverage Form B. EXCLUSIONS is amended to include the following**:

**Additional Time** - "We" do not pay for any increase in loss resulting from additional time that is required to replace or repair any part of the Covered Property due to or arising out of:

> **(1)** Ordinances or laws requiring the use of construction materials or equipment that are different from the type of materials and equipment used in the property that is destroyed;

> **(2)** Ordinances or laws requiring "you" to test, evaluate, observe, or record the existence, level, or effects of "pollutants";

> **(3)** Adverse weather conditions;

> **(4)** Improvements necessary to correct deficiencies of original construction, erection, or fabrication; or

> **(5)** Alteration, additions, improvements or changes made in construction plans for contract work during repairs or replacement of lost or damaged property.

**Consequential Loss** - "We" do not pay for any increase in loss resulting from any other consequential loss.

**Lease, Contract, and License** - "We" do not pay for any increase in loss resulting from the suspension, lapse, or cancellation of any lease, contract, or license.

**Penalties** - "We" do not pay for any increase in loss resulting from interference by strikers or any other person or organization interfering with the rebuilding, repairing, or replacing the Covered Property.

"We" do not pay for any increase in loss resulting from import/export or customs restriction or regulation.

"We" do not pay for any increase in loss resulting from non-availability of funds, other than insurance reimbursement, for the repair or replacement of lost or damaged property.

\*\*\*\*\*

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

\*\*\*\*\*

**B. EXCLUSIONS**

\*\*\*\*\*

**3.** "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a Covered Cause of Loss results "we" do pay for the resulting loss.

**a.** **Defects, Errors, and Omissions** - "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

**(1)** Design, specifications, construction, or workmanship;

**(2)** Planning, zoning, development, siting, surveying, grading, or compaction; or

**(3)** Maintenance, installation, renovation, remodeling, or repair.

\*\*\*\*\*

**d.** **Settling, Cracking, Shrinking, Bulging, or Expanding** - "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, foundations, walls, ceilings, glass, or roofs.

14. The Builders' Risk Policy contained the following Loss Conditions applicable

to the coverage provided in the Builders' Risk Inland Marine Coverage Form:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

\*\*\*\*\*

**D.** **LOSS CONDITIONS**

*\*\*\*\*\**

5. **Protect Property** - "You" must take all reasonable steps to protect Covered Property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect Covered Property from further damage by a peril insured against if a peril insured against has already caused a loss to Covered Property. "You" must keep an accurate record of such costs. However "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

*\*\*\*\*\**

13. **When Coverage Ceases** - Coverage will end when one of the following first occurs:

   a. This policy expires or is cancelled;

   b. The building or structure described on the "declarations" is accepted by the purchaser;

   c. "Your" interest in the Covered Property ceases;

   d. "You" abandon construction with no intent to complete it;

   e. The building or structure described on the "declarations" has been completed for more than 90 days; or

   f. The building or structure described on the "declarations" has been occupied in whole or in part, or put to its intended use for 60 days.

*\*\*\*\*\**

**SOFT COSTS, RENTAL INCOME AND EARNINGS ENDORSEMENT**

*\*\*\*\*\**

**D. LOSS CONDITIONS**

For the purposes of this endorsement only **Builders Risk Inland Marine Coverage Form, D. Loss Conditions** is amended to include the following:

**Due Diligence** - "We" only pay for "soft costs", loss of "rental income" or loss of "earnings" during the period of time that would be required with due diligence and dispatch to rebuild or restore the damaged Covered Property with materials of like kind and quality.
"You" must do everything reasonably possible to minimize "soft costs", loss of "rental income" or loss of "earnings".

**Interference and Access** - "You" must minimize any interference with the construction schedule to avoid or reduce any resulting "delay".

"You" must also allow "us" access to the Covered Property so that "we" can negotiate with
the contractors, manufacturers, suppliers, or other involved parties so "we" can:

    **a.**    Establish the cause and extent of the loss to Covered Property, "soft costs", loss of "rental income" or loss of "earnings"; and

    **b.**    Determine and suggest methods to minimize or avoid the "delay" in construction, repairing, remodeling, or renovation.

15.    On or about September 28, 2020, Tenneva reported a claimed loss to the subject property. The date of loss attributed to the damage to the subject property was September 25, 2020.

16.    The claimed damage to the subject property involved a partial collapse of the subject property. The partial collapse of the subject property is shown below:



17.     Shortly after receiving notice of the claim, Cincinnati proceeded to investigate, inspect and adjust the loss. On December 16, 2020, Cincinnati informed Tenneva it would be investigating the loss under a Reservation of Rights.

18.     As part of its investigation, Cincinnati retained the engineering firm, Thornton Tomasetti, ("TT") to investigate the cause, nature and extent of claimed damage by the partial collapse of the subject property.

19.     TT concluded the partial collapse to the subject property was caused by defects, errors, and/or omissions in the design, specifications, construction, or workmanship of the subject property. Specifically, TT concluded:

> The cause of the partial building collapse was due to the failure of one or both of the cold-formed steel bearing walls at the second floor along gridlines 13 and 15 between G and C. The cold-formed steel framed wall(s) failed under the weight of the precast planks, superimposed dead loads, and the limited live loads applied to the planks at the time of the collapse. The specific bearing wall at the second floor where the collapse initiated is unknown. The failure of one of the second floor bearing walls is consistent with the buckled studs observed in the WT210 wall along gridline 11 between K and N that had similar loading at the time of the collapse.

20.     At the conclusion of Cincinnati's investigation, Cincinnati provided Tenneva with the TT report which identified the cause of the loss and all defects that contributed to the damage. The TT report also included a detailed report of only the damage that was directly attributable to the loss, and a separate damage repair plan to address the necessary repairs related only to the loss. The TT report is attached hereto as **Exhibit**

**2**.

21.     Cincinnati has issued, and continues to issue, payments for the covered damages in accordance with the Builders' Risk Policy's terms, conditions, and exclusions, and in accordance with the scope of covered damage as identified by TT.

22.     Cincinnati has issued or processed payment for all covered damages to the subject property identified to date, although Cincinnati continues to investigate the claim under reservation of rights, and per agreement with Tenneva, continues to evaluate submissions from Tenneva to determine if the submissions are covered, and if so, issue payments.     The Policy had a deductible of $5,000.00.

23.     Tenneva has notified Cincinnati in writing that it disagrees with the coverage positions Cincinnati has taken on several issues and has threatened bad faith litigation.

24.     By letter dated February 25, 2022, Cincinnati notified Tenneva of additional payments being made under the Builders' Risk Policy, but also that it could not agree to the coverage positions being advanced by Tenneva.  Therefore, Cincinnati advised Tenneva it was instituting this declaratory judgment action to allow this Honorable Court to determine, under the controlling law of the State of Tennessee, issues related to coverage, causation, and extent of policy liability.  A copy of the letter dated February 25, 2022 is attached hereto as **Exhibit 3**.

25.     Cincinnati avers and alleges that an actual controversy exists between it and Tenneva within the meaning of 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, and that this Honorable Court is vested with the power in the instant case to declare and adjudicate the rights and legal relationships of Cincinnati and Tenneva with reference to the issues raised herein.   The issues currently in dispute are addressed in this Complaint, but

Cincinnati reserves the right to amend the Complaint to raise additional coverage issues should they arise between the parties.

## IV.    ISSUES FOR DECLARATORY JUDGMENT

26.    Cincinnati incorporates and references the allegations contained in ¶¶ 1-25 of this Complaint.

27.    Under the Builders' Risk Policy, losses to the following property are covered, subject to all Builders' Risk Policy terms, conditions, and exclusions:

### BUILDERS' RISK INLAND MARINE COVERAGE FORM

*****

### A. COVERAGE

**1.    Covered Property**

**a.    Buildings and Structures** - "We" cover direct physical loss caused by a Covered Cause of Loss to buildings and structures described on the "declarations" while in the course of construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, all while located on the premises of the buildings or structures described on the "declarations", or within 1,000 feet of such premises. This also includes foundations, excavations, grading and filling.

**b.    Scaffolding and Construction Forms** - "We" cover direct physical loss, caused by a Covered Cause of Loss, to scaffolding or construction forms provided the scaffolding or construction forms are located at, or within 1,000 feet of, a building or structure described on the "declarations" and used to service the described building or structure.

28.    Under the Builders' Risk Policy, "soft costs" are covered, subject to all Policy terms, conditions, and exclusions, only as follows:

### SOFT COSTS, RENTAL INCOME AND

**EARNINGS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

*****

**A.    COVERAGE**

For the purposes of this endorsement only

**1.    Soft Costs**

Builders Risk Inland Marine Coverage Form **A. COVERAGE, 4. Additional Coverages, o. Soft Costs** is deleted in its entirety and replaced by the following:

**o.    Soft Costs** - When a "limit" is indicated for "soft costs", "we" pay for "soft costs" that arise out of a "delay" caused by a Covered Cause of Loss to Covered Property. The most "we" will pay is the limit of insurance shown in the Schedule of this endorsement.

29.    The Builders' Risk Policy contained substantial limitations and exclusions applicable to coverage, as follows:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

*****

**A.  COVERAGE**

*****

**3.    Covered Causes of Loss**

"We" cover risks of direct physical loss unless the loss is:

**a.**    Limited by this coverage form; or

**b.**    Caused by a peril that is excluded.

30.    The Builders' Risk Policy included the following definitions applicable to coverage under the Builders' Risk Inland Marine Coverage Form:

# BUILDERS' RISK INLAND MARINE COVERAGE FORM

*****

## F. DEFINITIONS

1.   The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2.   The words "we", "us", and "our" mean the company providing this coverage.

*****

4.   "Delay" means the period of time between the actual date of completion of the insured project with the exercise of due diligence and dispatch and the date the insured project would have been completed had no Covered Cause of Loss occurred to Covered Property.

5.   "Limit" means the amount of coverage shown in the declarations, unless the "limit" is amended by **E. OTHER CONDITIONS,15. Provisional Limit.**

*****

8.   "Soft Costs" means the necessary expenses relating to the construction, erection, or fabrication of Covered Property that are over and above those costs which would have been incurred had there been no "delay". These costs are limited to the following:

   a.   Additional interest expense on money "you" borrow to finance construction, remodeling, renovation or repair;

   b.   Additional realty taxes and other assessments which "you" incur;

   c.   Additional advertising and promotional expenses;

   d.   Additional costs consisting of commissions and administrative expenses, which result from renegotiation of leases, and expediting expenses such as overtime and additional transportation or storage costs.

   e.   Additional fees for accountants, architects, attorneys, consultants, engineers, insurance premiums,

franchises, project administration, royalties and watchman or guard services.

\*\*\*\*\*

**10.** "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

31. The Builders' Risk Policy contained the following limitation applicable to "soft costs" coverage:

**SOFT COSTS, RENTAL INCOME AND
EARNINGS ENDORSEMENT**

\*\*\*\*\*

**A. COVERAGE**

\*\*\*\*\*

"We" pay only the "soft costs", loss of "rental income" and loss of "earnings" incurred within 12 consecutive months after the date of direct physical loss to Covered Property.

32. The Builders' Risk Policy contained the following exclusions applicable to the coverage provided in the Builders' Risk Inland Marine Coverage Form:

**SOFT COSTS, RENTAL INCOME AND
EARNINGS ENDORSEMENT**

\*\*\*\*\*

**B. EXCLUSIONS**

For the purposes of this endorsement only

**1. Builders Risk Inland Marine Coverage Form B. EXCLUSIONS, 2.d. Loss of Use** is deleted in its entirety and replaced by the following:

**d.** **Loss of Use** - "We" do not pay for loss caused by or resulting from loss of use, business interruption, "delay" or loss of market, except as provided by these Additional Coverages.

**2. Builders Risk Inland Marine Coverage Form B. EXCLUSIONS is amended to include the following**:

**Additional Time** - "We" do not pay for any increase in loss resulting from additional time that is required to replace or repair any part of the Covered Property due to or arising out of:

    **(1)**    Ordinances or laws requiring the use of construction materials or equipment that are different from the type of materials and equipment used in the property that is destroyed;

    **(2)**    Ordinances or laws requiring "you" to test, evaluate, observe, or record the existence, level, or effects of "pollutants";

    **(3)**    Adverse weather conditions;

    **(4)**    Improvements necessary to correct deficiencies of original construction, erection, or fabrication; or

    **(5)**    Alteration, additions, improvements or changes made in construction plans for contract work during repairs or replacement of lost or damaged property.

**Consequential Loss** - "We" do not pay for any increase in loss resulting from any other consequential loss.

**Lease, Contract, and License** - "We" do not pay for any increase in loss resulting from the suspension, lapse, or cancellation of any lease, contract, or license.

**Penalties** - "We" do not pay for any increase in loss resulting from interference by strikers or any other person or organization interfering with the rebuilding, repairing, or replacing the Covered Property.

"We" do not pay for any increase in loss resulting from import/export or customs restriction or regulation.

"We" do not pay for any increase in loss resulting from non-availability of funds, other than insurance reimbursement, for the repair or replacement of lost or damaged property.

*****

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

\*\*\*\*\*

**B.  EXCLUSIONS**

\*\*\*\*\*

   **3.**    "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a Covered Cause of Loss results "we" do pay for the resulting loss.

   **a.    Defects, Errors, and Omissions** - "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

   **(1)**    Design, specifications, construction, or workmanship;

   **(2)**    Planning, zoning, development, siting, surveying, grading, or compaction; or

   **(3)**    Maintenance, installation, renovation, remodeling, or repair.

\*\*\*\*\*

   **d.    Settling, Cracking, Shrinking, Bulging, or Expanding** - "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, foundations, walls, ceilings, glass, or roofs.

33.    The Builders' Risk Policy imposes the following Loss Conditions upon coverage for any losses that would otherwise be covered under the Policy:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

\*\*\*\*\*

**D.    LOSS CONDITIONS**

\*\*\*\*\*

   **5.    Protect Property** - "You" must take all reasonable steps to protect Covered Property at and after an insured loss to avoid further loss. "We" will pay the

reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect Covered Property from further damage by a peril insured against if a peril insured against has already caused a loss to Covered Property. "You" must keep an accurate record of such costs. However "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

*****

13. **When Coverage Ceases** - Coverage will end when one of the following first occurs:

    **a.** This policy expires or is cancelled;

    **b.** The building or structure described on the "declarations" is accepted by the purchaser;

    **c.** "Your" interest in the Covered Property ceases;

    **d.** "You" abandon construction with no intent to complete it;

    **e.** The building or structure described on the "declarations" has been completed for more than 90 days; or

    **f.** The building or structure described on the "declarations" has been occupied in whole or in part, or put to its intended use for 60 days.

*****

**SOFT COSTS, RENTAL INCOME AND<br/>EARNINGS ENDORSEMENT**

*****

**D.**     **LOSS CONDITIONS**

For the purposes of this endorsement only **Builders Risk Inland Marine Coverage Form, D. Loss Conditions** is amended to include the following:

**Due Diligence** - "We" only pay for "soft costs", loss of "rental income" or loss of "earnings" during the period of time that would be required with due diligence and dispatch to rebuild or restore the damaged Covered Property with materials of like kind and quality.

"You" must do everything reasonably possible to minimize "soft costs", loss of "rental income" or loss of "earnings".

**Interference and Access** - "You" must minimize any interference with the construction schedule to avoid or reduce any resulting "delay".

"You" must also allow "us" access to the Covered Property so that "we" can negotiate with
the contractors, manufacturers, suppliers, or other involved parties so "we" can:

    **a.**    Establish the cause and extent of the loss to Covered Property, "soft costs", loss of "rental income" or loss of "earnings"; and

    **b.**    Determine and suggest methods to minimize or avoid the "delay" in construction, repairing, remodeling, or renovation.

34.    Cincinnati avers and alleges that the cause of the partial collapse to the subject property was caused by a defect, error, and/or omission in the design, specifications, construction, or workmanship of the subject property and the cause of the partial collapse is excluded from coverage under the Builders' Risk Policy.

35.    Cincinnati avers and alleges that the subject property has certain defects, errors, and/or omissions in the design, specifications, construction, or workmanship of the subject property that are excluded under the Builders' Risk Policy issued to Tenneva. These defects, errors, and/or omissions in the design, specifications, construction, or workmanship of the subject property were not related to, or affected by, the partial collapse of the subject property and thus no coverage exists. Tenneva has demanded that

Cincinnati cover the cost of repair of these defects, but Cincinnati has declined based upon the information presented to date, as these defects are not covered by the policy and did not result in the partial collapse described herein.

36.     Cincinnati avers and alleges that it is only obligated to provide coverage to Tenneva for resulting losses that arise from a defect, error, or omission in the design, specifications, construction, or workmanship of the subject property, if and only if, a loss by a Covered Cause of Loss results from that defect, error, or omission in the design, specifications, construction, or workmanship of the subject property. Otherwise, the defects, errors, and/or omissions in the design, specifications, construction, or workmanship of the subject property are excluded from coverage.

37.     Cincinnati avers and alleges that if the loss or damage to the subject property consists of only  a defect, error, or omission in the design, specifications, construction, or workmanship of the subject property and no resulting Covered Cause of Loss occurs, then the defect, error, or omission in the design, specifications, construction, or workmanship of the subject property is not covered under the Builders' Risk Policy and Cincinnati owes no benefit of coverage to Tenneva.

38.     Cincinnati avers and alleges that "soft costs", as that term is defined in the Policy, are limited to the enumerated categories of "soft costs" listed in the definition of "soft costs" and Cincinnati is not obligated to cover Tenneva's claims for "soft costs" that do not fall within those categories. Tenneva has submitted multiple documents requesting reimbursement or coverage for items which do not fall within the enumerated categories and definition of "soft costs" contained in the Builders' Risk Policy.

39.     Cincinnati further avers and alleges that only "soft costs" that arise out of a

"delay" caused by a Covered Cause of Loss to Covered Property are covered under the Builders' Risk Policy and Cincinnati is not obligated to provide coverage to Tenneva for "soft costs" that do not arise out of a "delay".

40.     Cincinnati further avers and alleges that Tenneva's "soft costs" coverage is limited to "soft costs" incurred within 12 consecutive months after the date of covered, direct physical loss to the subject property, and Cincinnati is not obligated to remit payment for Tenneva's "soft costs" claims incurred after September 25, 2021.

41.     Cincinnati avers and alleges that the Builders' Risk Policy provides coverage for only those "soft costs" that are necessary expenses relating to the construction, erection, or fabrication of the subject property and that Tenneva's claims for "soft costs" that are not necessary expenses relating to the construction, erection, or fabrication of the subject property are not covered under the Builders' Risk Policy.

42.     Cincinnati avers and alleges that any claims for loss of use, business interruption, or loss of market are not covered and specifically excluded under the Policy and Cincinnati is not obligated to pay any of Tenneva's claimed losses for loss of use, business interruption, or loss of market.

43.     Cincinnati avers and alleges that any increase in loss that arises from additional time needed by Tenneva to identify and correct deficiencies in construction, erection, or fabrication of the subject property are not covered under the Builders' Risk Policy and Cincinnati is not obligated to pay for any such increase in loss as claimed by Tenneva.

44.     Cincinnati avers and alleges that any increase in loss attributable to time needed to make changes to construction plans is not covered under the Builders' Risk

Policy and Cincinnati is not obligated to pay for any such increase in loss as claimed by Tenneva.

45.     Cincinnati avers and alleges that any costs, expenses, and/or fees claimed by Tenneva related to identification of defects, errors, and/or omissions in the design, specifications, construction, or workmanship of the subject property that are not related to the direct physical loss caused by a covered cause of loss, are not covered and thus Cincinnati is not obligated to remit payment to Tenneva for these claimed costs, expenses, and/or fees.

46.     Cincinnati avers and alleges that any costs, expenses, and/or fees related to Tenneva's market analyst, Dimond Hotel Consulting Group, are not covered under the Policy's "soft costs" coverage since those costs, expenses, and/or fees do not fall within the definition of "soft costs", as defined by the Builders' Risk Policy, and thus were not "necessary expenses relating to the construction, erection, or fabrication of Covered Property that are over and above those costs which would have been incurred had there been no 'delay'."

47.     Cincinnati seeks a declaration from this Honorable Court that it has paid or agreed to pay all amounts due and owing under the Builders' Risk Policy as a result of the claimed loss of September 25, 2020.

48.     Cincinnati seeks a declaration that the additional losses claimed by Tenneva, other than those for which it made payment were not covered under the Builders' Risk Policy because such other damages were not "direct physical loss caused by a Covered Cause of Loss".

49.     Cincinnati seeks a declaration from this Honorable Court that it is not

obligated to provide payment for all claims presented by Tenneva based on the following exclusions:

**SOFT COSTS, RENTAL INCOME AND
EARNINGS ENDORSEMENT**

*****

**B.      EXCLUSIONS**

For the purposes of this endorsement only

**1.      Builders Risk Inland Marine Coverage Form B. EXCLUSIONS, 2.d. Loss of Use is deleted in its entirety and replaced by the following:**

**d.      Loss of Use** - "We" do not pay for loss caused by or resulting from loss of use, business interruption, "delay" or loss of market, except as provided by these Additional Coverages.

**2.      Builders Risk Inland Marine Coverage Form B. EXCLUSIONS is amended to include the following:**

**Additional Time** - "We" do not pay for any increase in loss resulting from additional time that is required to replace or repair any part of the Covered Property due to or arising out of:

**(1)**      Ordinances or laws requiring the use of construction materials or equipment that are different from the type of materials and equipment used in the property that is destroyed;

**(2)**      Ordinances or laws requiring "you" to test, evaluate, observe, or record the existence, level, or effects of "pollutants";

**(3)**      Adverse weather conditions;

**(4)**      Improvements necessary to correct deficiencies of original construction, erection, or fabrication; or

(5)    Alteration, additions, improvements or changes made in construction plans for contract work during repairs or replacement of lost or damaged property.

**Consequential Loss** - "We" do not pay for any increase in loss resulting from any other consequential loss.

**Lease, Contract, and License** - "We" do not pay for any increase in loss resulting from the suspension, lapse, or cancellation of any lease, contract, or license.

**Penalties** - "We" do not pay for any increase in loss resulting from interference by strikers or any other person or organization interfering with the rebuilding, repairing, or replacing the Covered Property.

"We" do not pay for any increase in loss resulting from import/export or customs restriction or regulation.

"We" do not pay for any increase in loss resulting from non-availability of funds, other than insurance reimbursement, for the repair or replacement of lost or damaged property.

*****

## BUILDERS' RISK INLAND MARINE COVERAGE FORM

*****

## B. EXCLUSIONS

*****

3.    "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a Covered Cause of Loss results "we" do pay for the resulting loss.

a.    **Defects, Errors, and Omissions** - "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

(1)    Design, specifications, construction, or workmanship;

(2)    Planning, zoning, development, siting, surveying, grading, or compaction; or

**(3)** Maintenance, installation, renovation, remodeling, or repair.

*****

**d.** **Settling, Cracking, Shrinking, Bulging, or Expanding** - "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, foundations, walls, ceilings, glass, or roofs.

50. Cincinnati seeks a declaration that, under the Builders' Risk Policy, losses to the subject property are only covered in accordance with the Policy terms, conditions, and exclusions.

51. Cincinnati seeks a declaration that the damages for which coverage has been denied do not fall within the following insuring agreement of the Builders' Risk Policy:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

*****

**A. COVERAGE**

**1.** **Covered Property**

**a.** **Buildings and Structures** - "We" cover direct physical loss caused by a Covered Cause of Loss to buildings and structures described on the "declarations" while in the course of construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, all while located on the premises of the buildings or structures described on the "declarations", or within 1,000 feet of such premises. This also includes foundations, excavations, grading and filling.

**b.** **Scaffolding and Construction Forms** - "We" cover direct physical loss, caused by a Covered Cause of Loss, to scaffolding or construction forms provided the scaffolding or construction forms are located at, or within 1,000 feet of, a building or structure described on the "declarations" and used to service the described building or structure.

\*\*\*\*\*

### SOFT COSTS, RENTAL INCOME AND
### EARNINGS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

\*\*\*\*\*

## A.    COVERAGE

For the purposes of this endorsement only

### 1.    Soft Costs

Builders Risk Inland Marine Coverage Form **A. COVERAGE, 4. Additional Coverages, o. Soft Costs** is deleted in its entirety and replaced by the following:

**o.    Soft Costs** - When a "limit" is indicated for "soft costs", "we" pay for "soft costs" that arise out of a "delay" caused by a Covered Cause of Loss to Covered Property. The most "we" will pay is the limit of insurance shown in the Schedule of this endorsement.

52.    Cincinnati seeks a declaration that the Builders' Risk Policy provides no coverage for the claims for which coverage has been denied because the Policy only provides as follows:

**BUILDERS' RISK INLAND MARINE COVERAGE FORM**

\*\*\*\*\*

**A.  COVERAGE**

\*\*\*\*\*

### 3.    Covered Causes of Loss

"We" cover risks of direct physical loss unless the loss is:

**a.**    Limited by this coverage form; or

**b.** Caused by a peril that is excluded.

53. Cincinnati avers the subject property sustained no covered loss, other than the damage to the subject property for which payment has been made or agreed (subject to its ongoing adjustment as claims are being submitted) by partial collapse or otherwise on September 25, 2020, and that it is not obligated to provide coverage for any of the additional damage being claimed by Tenneva.

54. Cincinnati avers and alleges that the remaining damages claimed by Tenneva did not occur as a result of any covered cause of loss or damage which was occasioned on September 25, 2020.

55. As these are coverage matters, to which a dispute exists between the parties, and Tenneva has indicated not only that it contests the coverage determination, but has threated bad faith litigation, this Declaratory Judgment Action is the only appropriate means to resolve questions of coverage, causation, and Policy liability.

56. Cincinnati further relies upon all other provisions, terms, conditions, and exclusions of the Builders' Risk Policy in this Declaratory Judgment Action.

57. This Honorable Court is how empowered and authorized to determine liability issues, and to resolve the conflicting questions of coverage and causation which exists under the Builders' Risk Policy with respect to the claims by Tenneva.

**WHEREFORE**, the Plaintiff, The Cincinnati Insurance Company, prays as follows:

1. The Defendant be required to answer and appear herein;

2. That this Honorable Court adjudicate and declare that the damage identified in this Complaint, other than that which has been paid or agreed to by Cincinnati, is not covered by the Builders' Risk Policy;

3.     That this Honorable Court adjudicate and declare that Tenneva is not entitled to coverage under the Builders' Risk Policy for any loss or damage to the subject property where the loss or damage constituted errors, defects, omissions in the design, specifications, construction, or workmanship of the subject property;

4.     That this Honorable Court adjudicate and declare that Cincinnati is only obligated to make payment for "soft costs" that are specifically described in the Builders' Risk Policy;

5.     That this Honorable Court adjudicate and declare that Tenneva is not entitled to coverage for "soft costs" beyond the twelve (12) month limitation period identified in the Builders' Risk Policy issued to Tenneva;

6.     That this Honorable Court adjudicate and declare that Tenneva is not entitled to coverage for any loss of use, business interruption, or loss of market under the Builders' Risk Policy as result of the loss or damage to the subject property on September 25, 2020;

7.     That this Honorable Court adjudicate and declare that the Builders' Risk Policy does not obligate Cincinnati to pay for amounts in excess of the amounts it has paid to date, except for any areas of the subject property or claims by Tenneva where this Honorable Court determines coverage applies;

8.     That this Honorable Court adjudicate and declare that Cincinnati is not obligated to make payment for costs, fees, or expenses claimed by Tenneva for identification of defects, errors, or omissions in the design, specifications, construction, or workmanship of the subject property where those defects, errors, or omissions are not related to the covered loss or damage to the subject property;

9.      That this Honorable Court adjudicate and declare that Cincinnati is not obligated to make payment for any increase in loss that arises from the additional time needed by Tenneva to identify and correct deficiencies in construction, erection, or fabrication of the subject property based on the Builders' Risk Policy's exclusions;

10.      That this Honorable Court adjudicate and declare that Cincinnati is not obligated to make payment for the additional claims as presented by Tenneva; and

11.      For such other legal and equitable relief as this Honorable Court deems just and proper.

Respectfully submitted,

s/Parks T. Chastain
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**MATTHEW B. ROGERS**
Registration No. 38777
DIRECT: (615) 630-7725
(615) 256-8787, Ext. 121
mrogers@bkblaw.com
Attorneys for Plaintiff, The Cincinnati Insurance
Company

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN  37228